**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO (EASTERN DIVISION)**
**Case No.: 21-CR-00806-PAB**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**ROSS CHARNO,**

      **Defendant.**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A REASONABLE SENTENCE

Defendant, **ROSS CHARNO ("Mr. Charno")**, by and through undersigned counsel, hereby files this Sentencing Memorandum and moves this Court pursuant to 18 U.S.C. § 3553(a) to impose a reasonable sentence, all facts and circumstances considered.

## I.      INTRODUCTION

Mr. Charno is a forty-eight (48) year old father of two minor children who also serves as his wife's primary caretaker. Mr. Charno understands that he has been charged with, and pled guilty to, a serious offense.  He is ashamed of his conduct, has taken full responsibility for his actions, and expects to be punished for what he did. However, there are several mitigating factors which Mr. Charno respectfully brings to this Court's attention for its consideration when fashioning the appropriate sentence. Except for the offense conduct at issue here, Mr. Charno has led an exemplary and law-abiding life. Inter alia, Mr. Charno's early and complete acceptance of responsibility, unique family circumstances, the public and private embarrassment of a felony conviction, the negative impact the conviction will have on Mr. Charno for the remainder of his life, and his low risk of recidivism all provide ample justification for the Court to impose a below-

guideline sentence. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a).  See Kimbrough v. United States, 552 U.S. 85, 101 (2007).

## II.     PROCEDURAL HISTORY

1.      On November 10, 2021, Mr. Charno was charged by Information with one (1) count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (Count 1). (D.E. 29).

2.      On December 28, 2021, Mr. Charno pled guilty to the Information. (D.E. 37).

3.      Sentencing is set for May 23, 2022, at 9:00 A.M.

## III.     ADVISORY GUIDELINES CALCULATIONS

### A.     UNCONTESTED GUIDELINE PROVISIONS

U.S.S.G. §2X1.1 is the applicable guideline for violations of 18 U.S.C. § 371. Under U.S.S.G. §2X1.1(a), the base offense level is determined using the guideline for the substantive offense (18 U.S.C. § 1343 – Wire Fraud).

U.S.S.G §2B1.1 is the guideline for violations of 18 U.S.C. § 1343. The base offense level is six (6). See U.S.S.G. §2B1.1(a)(2). The Government and Mr. Charno jointly recommend this Court find the value of the funds involved to be at least $9,000,000, but no more than $25,000,000, resulting in a twenty (20)-point increase to the base offense level. See Plea Agreement at ¶ 20 (D.E. 48); see also U.S.S.G. §2B1.1(b)(1)(K).

The parties agree that a two (2)-point downward adjustment is appropriate because Mr. Charno was a minor participant in the offense conduct. See Plea Agreement at ¶ 20 (D.E. 48); U.S.S.G. §3B1.2(b). Furthermore, the base offense level should be reduced by two (2) points for acceptance of responsibility under U.S.S.G. §3E1.1(a). See Plea Agreement at ¶ 21 (D.E. 48). The Government has also agreed to file a motion requesting an additional  one  (1)  level  decrease

pursuant to U.S.S.G. §3E1.1(b) due to Mr. Charno's substantial and timely cooperation with the investigation of his misconduct. Id. (D.E. 48).

**B.      CONTESTED LOSS AMOUNT CALCULATION**

Mr. Charno and the Government agreed that the loss amount attributable to Mr. Charno's conduct is more than $9,000,000 but less than $25,000,000. Despite this, the United States Probation Office insists that Mr. Charno is responsible for an intended loss amount of $35,746,506 because he was aware that one of his co-defendants attempted to process an additional thirty-nine (39) PPP loans worth $17,397,114. See Presentence Investigation Report at ¶ 16.  The Probation Office's loss calculation results in a twenty-two (22)-point increase to Mr. Charno's base offense level. U.S.S.G. §2B1.1(b)(1)(L). After the undersigned and the Government – separately – conferred with the Probation office to explain their identical positions on the loss amount, the Probation Office maintains its request to increase Mr. Charno's advisory guideline range by two points.

It is legally insufficient to include the thirty-nine (39) PPP loans sought by co-defendant James Stote in the loss calculation for Mr. Charno. See United States v. Manatau, 647 F.3d 1048 (10th Cir. 2011) (quoting Giles v. California, 554 U.S. 353, 368 (2008)).

To be included in an advisory guidelines calculation the intended loss must have been an object of the defendant's purpose. Manatau, 647 F.3d at 1048. Indeed, "intended loss" is defined as "(I) the pecuniary harm that the defendant **purposely** sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." See U.S.S.G. § 2B1.1 cmt. n.3(A)(ii).

Thus, "**something is intended if it is done on purpose** – **not merely known, foreseen, or just possible or potentially contemplated**." Manatau, 647 F.3d at 1050 (holding "intended loss" does not mean a loss that the defendant merely knew would result from his scheme or a loss he might have possibly and potentially contemplated) (emphasis added).

"The simple fact is [that] intent and knowledge are different things, different as a matter of their plain meaning, different in their treatment in modern American criminal law." Id. at 1051. Consequently, Mr. Charno and the Government submit that the appropriate loss amount for guideline purposes[1] is $18,349,392.00 and a twenty (20) point increase to the base offense level is proper.

**C.     TOTAL OFFENSE LEVEL**

A total offense level of twenty-one (21) and criminal history category of I results in an advisory sentencing guideline range of thirty-seven (37) to forty-six (46) months' imprisonment. However, as further discussed below, several mitigating factors support a far lower, more reasonable sentence below the advisory guideline range.

**IV.     REQUEST FOR A REASONABLE SENTENCE**

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (a district judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented."**). "The corollary of that proposition is that district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing"

---

[1] The Parties also agree that the loss amount for restitution purposes is $3,126,567.15.

under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to—
>
>> (A)  reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
>>
>> (B)  provide adequate deterrence to criminal conduct;
>>
>> (C)  protect the public from future crimes of the defendant; and
>>
>> (D)  provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> *　　　　　*　　　　　*　　　　　*

5

(5) any pertinent policy statement—

\*            \*            \*            \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

Mr. Charno respectfully asks this Court to look beyond the advisory sentencing guideline range and focus on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose a reasonable sentence.

**A.    MITIGATING FACTORS**

**1. THE PERSONAL HISTORY AND CHARACTERISTICS OF ROSS CHARNO**

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guidelines calculation; indeed, the Guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into account the personal

6

characteristics of the defendant); United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the federal sentencing guideline calculations by considering the history and characteristics of Mr. Charno that weigh in favor of a significantly below-guidelines sentence.

Mr Charno was born in New York on December 20, 1973, and is one of two siblings. Although he grew up in a financially secure home, Mr. Charno's family was lacking in unity, support, and love, which partly explains why he is estranged from his parents and sister.

Despite this, Mr. Charno had ambitions of creating a better life for himself. After earning his bachelor's degree in Economics from American University, Mr. Charno met his first wife. This relationship proved to be incredibly difficult and traumatic for Mr. Charno because of the financial expectations that his ex-wife had, and placed upon him. Indeed, Mr. Charno's first marriage was characterized by persistent anxiety and insecurity over the possibility of his wife leaving him if he did not provide everything (materially) she wanted. Unfortunately, Mr. Charno's fears came true in 2017, when, after fifteen (15) years of marriage, his ex-wife abandoned him.

Mr. Charno was left with two positives resulting from his relationship with his ex-wife – his children. Mr. Charno's true calling has always been, and always will be, fatherhood. When asked what his proudest achievement in this life has been thus far, Mr. Charno is quick to say his two daughters, ages fifteen (15) and thirteen (13).

Mr. Charno's actions here were motivated by the financial pressure he felt based on how his previous marriage ended (over issues surrounding money), coupled with a desire to give his present wife (Fernanda) and his children everything they wanted/he believed they deserved. None of this excuses Mr. Charno's behavior. The above is a partial explanation for same. Mr. Charno

acknowledges that he alone is responsible for his present situation, and he is sincerely remorseful and ashamed for what he has done.

When presented with the opportunity, Mr. Charno took the "easy road" to make money. Now, upon serious reflection, Mr. Charno understands he did so without appreciating the consequences of his decisions. To be clear, Mr. Charno's actions were not mistakes.  They were intentional and deliberate, but not born from malice or a desire to hurt others.  On the contrary, Mr. Charno is a very caring, kind, and loving person.

It is unfortunate that Mr. Charno devoted his considerable potential to the scheme which has brought him before the Court. Yet, Mr. Charno can be given an opportunity to redeem himself and to remedy the harm he has caused — and in the process become a productive member of society once again.

We urge this Court consider the "whole" of Mr. Charno, not just the conduct at issue <u>sub judice</u>.  Ross Charno is a father, friend, hard-worker, and most importantly, a decent human being. Like all of us at some point in our lives, he made a serious mistake – one that cost him the unity of his family, his future career in many respects, his reputation, and most importantly, his legal status and liberty. In its remarks on the effect of incarceration on first-time, nonviolent offenders, the First Circuit in <u>Prosperi</u> recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

686 F.3d at 48.

Mr. Charno urges the Court to take his personal characteristics and life history into account when imposing sentence.

## 2. MR. CHARNO'S EARLY AND COMPLETE ACCEPTANCE OF RESPONSIBILITY

One of the goals of sentencing is rehabilitation. See Williams v. New York, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir.1981).

Furthermore, "[a] sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion"). United States v. Robinson, 741 F.3d 588 (5th Cir. 2014); see also United States v. Knox, 573 F.3d 441 (7th Cir. 2009); United States v. Landrón-Class, 696 F.3d 62 (1st Cir. 2012); United States v. Massey, 663 F.3d 852 (6th Cir. 2011); United States v. Leiskunas, 656 F.3d 732 (7th Cir. 2011); United States v. Doe, 398 F.3d 1254 (10th Cir. 2005).

Unlike defendants who never acknowledge their wrongful behavior, Mr. Charno accepted full responsibility for his actions, and he is truly remorseful for the harm that his greed has caused. Mr. Charno understands that his crime was not a victimless one, and that he must atone for same. He is ashamed of the fact that he undermined the stability of important federal lending programs designed to provide crucial financing to those reeling from the effects of the COVID-19 Pandemic. Despite this, Mr. Charno hopes the Court bears in mind his sincere desire to be a productive member of society and to never reoffend again.

After his arrest, Mr. Charno promptly and completely assisted the Government in every possible way. Due to the nature of the fraud, Mr. Charno's conduct saved the Government

hundreds of hours of time and avoided the substantial costs associated with trial for both this Court and the Government.

Mr. Charno's complete acceptance of responsibility for his actions weigh in favor of this Court granting a downward variance below the advisory guideline range. See Roberts v. United States, 445 U.S. 552, 558 (1980) (stating a defendant's cooperation demonstrates that the defendant "will transgress no more…respond to rehabilitative efforts…[and] not deem himself at war with his society."); see also United States v. Ruff, 535 F.3d 999 (9th Cir. 2008) (affirming sentence of one (1) day in jail and three (3) years of supervised release for defendant who pled guilty to embezzling $650,000 from non-profit organization over course of three years); United States v. Gardellini, 545 F.3d 1089 (D.C. Cir. 2008) (imposing sentence of probation for defendant convicted of filing false income tax return, where guidelines called for 10-16 months' imprisonment, because of defendant's "extraordinary " post arrest conduct).

### 3. MR. CHARNO'S UNIQUE FAMILY CIRCUMSTANCES

Mr. Charno also asks that the Court, when determining an appropriate sentence, consider (1) the chronic health issues of his wife, Fernanda, for whom he serves as a daily caretaker, as well as his two minor children (shared custody with his ex-wife).

In addition to suffering from severe epilepsy, Mr. Charno's wife has dealt with other significant health issues, including, but not limited to: diverticulitis, chronic anemia, perimenopause, sciatica and drop foot, a torn rotator cuff (resulting from a fall after suffering a mini epileptic episode), and an abdominal hernia – all of which have substantially impaired her quality of life and, on many days, her ability to provide self-care for ordinary, everyday tasks.

Mr. Charno's family circumstances do not negate his culpability in anyway, but they are worthy of strong consideration because of the dependents who rely on Mr. Charno daily. See

United States v. Husein, 478 F.3d 318 (6th Cir. 2007) (holding district court did not abuse its discretion by departing downward from advisory sentencing guidelines due to family circumstances for defendant who pled guilty to conspiracy to possess and distribute ecstasy because defendant was "irreplaceable" to her family); United States v. Schroeder, 536 F.3d 746 (7th Cir. 2008) (When a defendant presents an argument for a lower sentence based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members); United States v. Bueno, 549 F.3d 1176 (8th Cir. 2008) (Defendant who possessed more than 70 kilograms of cocaine given sentence of probation with house arrest for five years because of his wife's life-threatening illness and dependence on defendant).

### 4.  MR. CHARNO'S EARLY RESTITUTION

Since September 2020, Mr. Charno has been an employee of Boat Masters, a boat restoration and detailing business owned by his wife and her nephew.  Although he does not earn a significant income, Mr. Charno is prioritizing the repayment of his restitution.  Mr. Charno has $338,090.02 to pay immediately after sentencing, in addition to the forfeited property turned over to the Government thus far.  Mr. Charno is doing his best to remedy the damage he caused.

Mr. Charno respectfully urges this Court to consider, when fashioning his sentence, his substantial efforts to pay restitution. See United States v. Kim, 364 F.3d 1235 (11th Cir. 2004) (holding payment of $280,000 in restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, demonstrated their sincere remorse and acceptance of responsibility and was extraordinary enough to justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt  to pay restitution.); see also United States  v.  Oligmueller, 198  F.3d

669, 672 (8th Cir. 1999) (upholding downward departure for extraordinary restitution where defendant made voluntary payments a year prior to indictment, often worked sixteen-hour days on his farm to raise the money, took on a second job, turned over his life insurance policy and his wife's certificate of deposit, and gave up his home.).

## 1. DETERRENCE DOES NOT NECESSITATE INCARCERATION IN ALL CASES

In Pepper v. United States, 131 S.Ct. 1229, 1240 (2011), the Supreme Court emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the offender and not merely the crime.'" (quoting Williams v. New York, 337 U.S. 241, 247 (1949)); see also Miller v. Alabama, 567 U.S. 460, 470 (2012) ("punishment for crime should be graduated and proportioned to both the offender and the offense").

Indeed, a term of incarceration "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall 552 U.S. at 54. The United States Sentencing Commission has recognized that alternatives to incarceration "divert offenders from the criminogenic effects of imprisonment which include contact with more serious offenders, disruption of legal employment, and weakening of family ties." See "Sentencing Options Under the Guidelines," United States Sentencing Commission (1996).[2]

Mr. Charno respectfully requests this Court consider that a below-guidelines sentence would afford him a better opportunity to make amends for his conduct and repay the community for the funds he improperly received. He is a first-time offender with no pre-existing criminal history – imprisonment is not necessary to deter him from committing any future crimes. See

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/working-group-reports/simplification/SENTOPT.pdf

United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006), aff'd 301 Fed. Appx 93 (2d Cir. 2008) ("there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders."); see also "Fifteen Years of Guideline Sentencing," United States Sentencing Commission (2004) at 56 (noting that the Sentencing Guidelines were written, in part, to "ensure a short but definite period of confinement for a larger proportion of these 'white collar' cases, both to ensure proportionate punishment and to achieve deterrence.").[3]

In addition to the punishment imposed by this Court, Mr. Charno will bear the consequences of this conviction for the rest of his life. See United States v. Stewart, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment on the defendant"). In light of these considerations, Mr. Charno asks this Court to vary below the advisory guideline range because a term of imprisonment is unnecessary to deter him from committing further crimes.

## 2. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Under 18 U.S.C. §3553(a)(6), courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Data collected from fraud cases across the country and within the Northern District of Ohio, as well as a representative sample of sentences, demonstrate a downward variance in this case would not lead to unwarranted sentence disparities for similarly situated defendants. In fact, the sentences discussed below illustrate that District Court Judges across the country have imposed sentences based upon the

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf

circumstances unique to each case, which were appropriate for the individual—the human being—not merely the person in the courtroom labeled "the Defendant."

a. **NATIONAL AVERAGE LENGTH OF FRAUD SENTENCES**

From October 1, 2010, through September 30, 2021, the United States Sentencing Commission compiled sentencing data for 57,287 cases from every federal jurisdiction. See "Statistical Information Packet, Fiscal Year 2021, Northern District of Ohio," United States Sentencing Commission (April 2022).[4] In 16,466 of those cases, defendants received a downward variance from the advisory guidelines range. Id. at 12.

Of those 16,466 defendants that received downward variances, 1,672 (10.15%) of them were convicted of fraud related offenses. "2021 Annual Report and Sourcebook of Federal Sentencing Statistics," United States Sentencing Commission (2022) at 101.[5] The average sentence for those 1,672 defendants was nineteen (19) months, with an average downward variance equivalent to a 59.8% decrease from the bottom of the advisory guideline range. Id.

Here, the bottom of the advisory guideline range of thirty-seven (37) to forty-six (46) months' imprisonment is **nearly double the national average** sentence (19 months) for those who received downward variances. Thus, a downward variance here would conform with the need to prevent unwarranted disparities in sentencing and the need for the sentence to reflect the seriousness of the offense.

---

[4] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/ohn21.pdf
[5] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/2021_Annual_Report_and_Sourcebook.pdf

### b. TYPICAL FRAUD SENTENCES IN THE NORTHERN DISTRICT OF OHIO

An analysis of the average sentence length imposed on defendants convicted of fraud related offenses in the Northern District of Ohio further evidences a downward variance from the advisory guideline range would not only be reasonable, but also in line with general sentencing practices in this District. The Sentencing Commission's "Interactive Data Analyzer" revealed that, between 2015 and 2021, there were 465 reported cases involving fraud in this District where defendants had a criminal history category of I (results reproduced below). The average sentence length for those defendants was seventeen (17) months, with the median sentence being eight (8) months. It is important to note that these figures include sentencing information for all fraud-related cases, not only those in which a downward variance was granted.



The thirty-seven (37) to forty-six (46) month advisory guideline range in this case is **twice more than the average sentence imposed on defendants in this District**. Consequently, the

Court should place greater emphasis on the mitigating factors set forth in support of a below-guidelines sentence. See Adelson, 441 F.Supp.2d at 515 (stating that, "where the Sentencing Guidelines provide reasonable guidance, they are of considerable help to any judge in fashioning a sentence that is fair, just, and reasonable. But where, as here, the calculations under the guidelines . . . . is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and the human being who will bear the consequences.").

### c.  CASES WARRANTING A BELOW-GUIDELINES SENTENCE

"[D]istrict judges have an obligation to consider whether to depart from the Guidelines sentencing range or to impose a non-Guidelines sentence in every case." See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Defendant acknowledges that prison sentences have been given to many convicted of the offense Mr. Charno pled guilty to and of which he has been convicted.  Mr. Charno recognizes that every case involves distinct facts and circumstances, the below cases illustrate that below-guidelines sentences have been deemed sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. 3553(a). We respectfully request this Court also consider the Courts throughout the country which imposed sentences not including incarceration on defendants convicted of COVID-19 related fraud. See e.g.  United States v. Arman Hayrapetyan, Case No. 20-cr-00579-SVW-6 (C.D. Cal.) (in conspiracy involving approximately $22,000,000 in COVID-19 relief funds, defendant was sentenced to ten (10) months-probation);  United States v. Charles Hill, Case No. 20-cr-00296 (N.D. Ga.) (in conspiracy case involving a total intended loss of over $12,000,000, defendant was sentenced to five (5) years' probation, with the first twenty-seven (27) months to be served on home detention);  United States v. Butziger, Case No. 20-cr-00072 (D.R.I

16

(defendant sentenced to time served and three (3) years of supervised release with the first six (6) months on home detention for PPP Fraud involving loss of $543,959); United States v. Janet Jenison, Case No. 21-cr-00090 (S.D. Ohio) (defendant sentenced to five (5) years of probation including six (6) months of home confinement for PPP fraud involving an intended loss of $298,719.67); United States v. Jonathan VanScoyk, Case No. 21-cr-01620-JCH-1 (D. Ariz.) (defendant sentenced to two (2) years of probation for PPP fraud involving loss amount of $1,233,140); United States v. Christina McConnell, Case No. 21-cr-00216 (M.D. Pa.) (defendant sentenced to two (2)-years of probation for PPP fraud involving loss amount of $232,000; United States v. Justin Etwaru, Case No. 21-cr-20156 (S.D. Fla.) (defendant sentenced to two (2) years of probation for PPP fraud involving loss amount of $57,750); United States v. Matthew Welch, Case No. 20-cr-00103 (D. Mont.) (defendant sentenced to five (5) years of probation for PPP fraud involving loss amount of $35,000).

### 3. MR. CHARNO'S LOW LIKELIHOOD TO RECIDIVATE

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that (1) those sentenced under economic crime guidelines were less likely to recidivate than those sentenced under other guidelines; (2) older individuals were less likely to reoffend; (3) first-time offenders were less likely to recidivate than repeat offenders; (4) those who were employed were less likely to recidivate than those who were unemployed; (5) non-drug users were less likely to recidivate than drug users; (6) college graduates were significantly less likely to reoffend than those with lower levels of educational attainment; and (7) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. See "Measuring Recidivism: The Criminal History Computation of the

Federal Sentencing Guidelines," United States Sentencing Commission (May 2004) at 28-32.[6] Each of these factors strongly supports a finding that Mr. Charno poses no risk of reoffending.

The Eleventh Circuit discussed the likelihood of recidivating in <u>United States v. Clay</u>, 483 F.3d 739 (11th Cir. 2007). In <u>Clay</u>, the District Court sentenced the defendant to 60 months, even though his guidelines were 188-235 months, because of the District Court's view that the defendant was not likely to re-offend. <u>Id.</u> at 742-43. In affirming the defendant's sentence, the Eleventh Circuit stressed that a sentencing Court is "require[d] . . . to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." <u>Id.</u> at 745. Because the defendant in that case had "fundamentally changed since his offense" and "pose[d] a lesser risk to the community," the Eleventh Circuit determined that the sentencing court was correct in issuing a variance. <u>Id.</u> at 746. <u>See</u> <u>also</u> <u>Gall v. United States</u>, 552 U.S. 38, 57–59 (2007); <u>United States v. Cherry</u>, 487 F.3d 366, 369–70 (6th Cir. 2007) (granting significant downward variance from the guideline range where the defendant presented a low risk to reoffend); <u>Prosperi</u>, 686 F.3d at 48 (affirming non-incarcerative sentence where there was no risk of recidivism).

As further proof of the near zero risk of Mr. Charno reoffending, he has religiously observed the conditions of his release pending disposition of this matter and reported to his probation officer without fail. <u>See</u> <u>United States v. Munoz-Nava</u> 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home detention reasonable in drug case where guidelines were 47-56 months, partly because of defendant's

---

[6]  Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

"behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" showed the defendant was unlikely to reoffend).

Mr. Charno respectfully requests the Court, when fashioning his sentence, to consider his extremely low likelihood of reoffending.

## V.     CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

Mr. Charno will have to live with the knowledge that his actions have irreparably harmed his children and those closest to him – a sentence more severe than any this Court could impose. He respectfully asks that this Court downward vary from the advisory guideline range and impose a fair and just sentence.

Respectfully submitted,

**GRAYROBINSON, P.A.**
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Brian.Bieber@gray-robinson.com

By:     s/Brian H. Bieber
        BRIAN H. BIEBER
        Florida Bar #8140
        *Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 16, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Brian H. Bieber
BRIAN H. BIEBER
