IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-806 |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE PAMELA A. BARKER |
| v. | ) ) ) | |
| ROSS CHARNO, | ) ) | |
| Defendant. | ) | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Ross Charno (the "Defendant"). The Defendant is presently set for sentencing before the Court on May 23, 2022, for his conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's role in joining and helping perpetuate a scheme to submit numerous fraudulent Paycheck Protection Program ("PPP") loans, both for entities under his control and on behalf of other entities, offering and receiving kickbacks in return for the submission of fraudulent PPP loans, and for assisting the leader of the scheme, James Richard Stote, in crafting fraudulent documents for use in the scheme.

This memorandum sets forth the calculations of the United States Sentencing Guidelines (the "Guidelines") as calculated by the United States Probation Office ("Probation") in the final Presentence Investigation Report [ECF No. 61] (the "PSR"), and the government's sole objection to that calculation. Furthermore, this memorandum describes the factors that will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to

1

accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The government submits that a Guidelines range sentence is appropriate in this matter.

I.      **FACTUAL BACKGROUND**

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and his co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with Stote, Phillip J. Augustin, Wyleia Williams, and others. Through Stote, the Defendant sought fraudulent PPP loans for his own companies, OMP Enterprises LLC ("OMP") and PM Autobody, Inc. ("PM Autobody"). The Defendant then began recruiting additional co-conspirators and confederate borrowers in the hopes of receiving a kickback for his efforts. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms. In addition to obtaining loans for himself and for recruited co-conspirators, the Defendant also began assisting Stote in crafting the falsified tax forms submitted with numerous applications.

A.      **The CARES Act**

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—

especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

### B. Overview of Defendant's Conduct

A more detailed recitation of the facts relating to the scheme are detailed in the Information [ECF No. 29], the Defendant's plea agreement [ECF No. 48], and the final PSR [ECF No. 61].

Beginning in May 2020 through on or about the date of his arrest on June 25, 2020, the Defendant conspired with Stote and others to submit fraudulent PPP loan applications for entities under their control, including $896,532 in loans to Charno's own companies, OMP and PM Autobody. Stote, Augustin, Charno and other co-conspirators also solicited and recruited confederate borrowers, for whom they submitted fraudulent PPP loan applications. This includes fraudulent applications on behalf of Deon Levy (charged in case no. 1:22-CR-227), a resident of Ohio, and his two Ohio companies, Apex Now Corp. ("Apex Now") and Urban Housing Group LLC ("Urban Housing"). Charno was instrumental in the recruitment of Levy to seek both loans. Stote, Augustin, and Charno arranged for the confederate borrowers to pay 25% of the amount of the PPP loan as a kickback for obtaining the loan, to be wired to accounts controlled by Stote.

Early in the conspiracy, Stote and Augustin caused the submission of a PPP loan application on behalf of Augustin's company, Clear Vision Music Group ("Clear Vision"), relying on a counterfeit February 2020 bank statement for Clear Vision, and counterfeit IRS Forms 941, signed by Augustin.

After having initial success, Stote reached out to the Defendant to solicit his participating as a borrower to receive funds in exchange for a kickback. Stote and Charno first successfully sought a $244,062 loan for OMP, with Charno putting the application in his fiancée's name. After that success, they also obtained a $652,470 for PM Autobody, that time using Charno's own name. As with every PPP loan application in this scheme, these applications included falsified IRS Forms 941 with inflated payroll information.

Charno and others also solicited and recruited confederate borrowers for whom they submitted fraudulent PPP loan applications. Charno had early success in this regard with Levy, whose company, Apex Now, was approved for a $554,232 loan on or about May 20, 2020. Charno continued soliciting participation from Levy and other borrowers, including a second loan for Levy in the name of Levy's family member, and for others, such as Dennes Garcia and Cindi Denton.

Stote coordinated submitting the fraudulent PPP loan applications, largely through Bank Processor 1's online application portal. He generally used the confederate borrower's email to create an account with Bank Processor 1, which the borrower would then validate. Stote sometimes used email accounts he created and controlled to create an account for the borrower with Bank Processor 1.

In time, Stote was fielding interest from more confederate borrowers than he could handle, and he turned to Charno to assist him in creating the falsified documents needed for the applications. In particular, Charno assisted Stote by falsifying, at Stote's direction, many of the

4

IRS Forms 941 that were submitted to demonstrate the average monthly payroll for the applicant entities. Instead of starting from any facts about the applicants' payroll in the few instances in which the applicant had payroll, Stote and Charno calculated and listed the figures that would have to be reported in order to yield a PPP loan in the amount desired. The falsified payroll figures were determined based on a formula in which the desired PPP loan amount was equal to the average monthly payroll expenses for 2019, multiplied by 2.5. Stote and Charno created falsified IRS Forms 941 for all quarters of 2019 in support of the applications. The PPP loan applications also included bank statements that Stote falsified.

From May 2020 until the Defendant's arrest, he worked with Stote to continue recruiting new confederate borrowers and preparing fraudulent documents for use in PPP loan applications.

As a result of Defendant's conduct, application materials for at least 40 PPP loans worth at least $18,349,392 were submitted, with additional applications planned to be submitted.

## II. PROCEDURAL HISTORY

On June 24, 2020, the Defendant was charged in a Complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344. On November 10, 2021, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF No. 29]. The Defendant pleaded guilty to the Information pursuant to a written plea agreement [ECF No. 48] on December 28, 2021 before the Honorable Amanda Knapp, resulting in Judge Knapp's Report and recommendation [ECF No. 37], which this Court adopted on January 13, 2022 [ECF No. 47]. Sentencing is presently scheduled for May 23, 2022.

## III.   SENTENCING GUIDELINES CALCULATIONS

As set forth in the plea agreement [ECF No. 48, ¶ 20], the United States submits that the Defendant's Offense Level before acceptance of responsibility is 24:

| **Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 371 and 1343** | | |
|---|---|---|
| Base offense level | 6 | § 2B1.1(a)(2) |
| Intended Loss: at least $9 million, but less than $25 million | +20 | § 2B1.1(b)(1)(K) |
| Mitigating role: minor participant | -2 | § 3B1.2(b) |
| **Total Offense Level before Acceptance of Responsibility** | **24** | |

As set forth in the PSR, Probation computes the offense level to be 2 levels higher, due to the finding that Defendant's relevant conduct includes not only the PPP loans in which the Defendant had a hand of some kind, but includes all 79 of the PPP applications for which Stote was responsible, resulting in a 22-level increase for an intended loss of approximately $35,746,506. (*See* PSR ¶¶ 16, 24). The parties and Probation agree that the Defendant is expected to receive a 3-level reduction for acceptance of responsibility.

The Defendant and the government have both objected to the larger upward adjustment due the intended loss amount in the PSR, and have both asked the Court to impose the 20-level increase specified in the parties' plea agreement. While the government recognizes that the Defendant could have reasonably foreseen that Stote was submitting more fraudulent applications than those in which he assisted, the government does not have evidence that any of those specific loans were within the Defendant's contemplation sufficiently to render them, within the meaning of "relevant conduct," all of the following:

   (i) within the scope of the jointly undertaken criminal activity,

   (ii) in furtherance of that criminal activity, and

   (iii) reasonably foreseeable in connection with that criminal activity;

*See* U.S.S.G. § 1B1.3(a)(1)(B). Particularly for applications submitted early in the scheme before

6

Charno began assisting Stote on a regular basis in the wider scheme, holding Charno responsible for those applications would be inconsistent with the manner in which the Guidelines have been calculated for every other defendant in this conspiracy who has proceeded to sentencing.

In the government's view, it appears that Charno saved a record of his work for Stote, which investigators found when conducting a search warrant at the time of his arrest. The loans in those records, including those he obtained or referred, are the best estimate of the scope of the criminal conduct he jointly undertook with Stote. Charno's mere knowledge that Stote had submitted or was submitting more applications than those on which he and Stote worked together does not compel the conclusion that Charno is responsible for everything Stote did.

The government submits that the particular circumstances of this case are more analogous to a drug defendant who agrees to participate in a particular part of a larger drug conspiracy, knowing full well that the coconspirator from whom he is obtaining his supply of drugs is importing much larger quantities, but not taking steps to make those other drugs part of their jointly undertaken criminal activity. In such a situation, the Guidelines recommend that the defendant not be held responsible for the other drugs he knew (or would have foreseen) his co-conspirator was selling. *See* U.S.S.G. § 1B1.3, n.4(C)(vii) (concerning Defendants R and S). Had Stote assembled Augustin and Charno in a room to coordinate their efforts, with the understanding that Augustin was responsible for certain acts as to half the loans, and Charno for acts as to other half of the loans, they would all be responsible for the full set. *Cf.* U.S.S.G. § 1B1.3, n.4(C)(viii) (concerning drug courier Defendants T, U, V, and W). But the evidence here suggests that Stote kept certain aspects of the larger conspiracy separate from one another. Accordingly, for these reasons, the government submits that the plea agreement accurately calculates the intended loss.

**IV.     CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the imposition of a Guidelines range sentence.

**A.     Nature and Circumstances of the Office**

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting false applications for himself, claiming to have employees and payroll that did not exist. The Defendant's greed did not stop there, as he recruited other borrowers to the scheme in exchange for kickback payments from their fraudulent loan proceeds. Nor did it stop there, as he also assisted Stote in falsifying the supporting documents for dozens more applications. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range.

**B.     History and Characteristics of the Defendant**

The Defendant is a 48-year-old man who reports having been engaged in the government procurement businesses and working as a ride-share driver at the time of the fraud. [ECF No. 61 at ¶ 54-55]. But his procurement business, it is stipulated, did not have "substantial legitimate operations." [ECF No. 48 at ¶ 31].

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for grand jury and a trial, as reflected in the 3-level downward adjustment for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

8

### C.     Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should address a need for both general and specific deterrence. The Sixth Circuit has recognized that, because "economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). Indeed, ensuring adequate punishment for, and deterrence of, white collar economic crime was one of the central motivators behind the creation of the Guidelines. *See United States v.* Musgrave, 761 F.3d 602, 609 (6th Cir. 2014) (collecting citations).

This case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance. A significant sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Individuals like the Defendant, who seek to defraud these programs, not only drain the program of limited funding, but they also make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs. Furthermore, a sentence within the Guidelines range is sufficient to protect the public from future crimes of this Defendant, and ensure specific deterrence.

### D. Need for the Sentence to Avoid Unwarranted Sentencing Disparities

A Guidelines range sentence will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. Judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment for offenses related to PPP fraud. *See, e.g.*, *United States v. Lawrence Lawson, et al.*, Case No. 1:21CR598 (N.D. Ohio, March 2022) (Gwin, J.) (imposing Guidelines range prison sentences for all conspiracy members[1] except one who had recently had a baby); *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, Case No. 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

As the Court knows, co-conspirators Stote and Augustin each received substantial terms of imprisonment within their respective Guidelines ranges, with Stote being sentenced to 120 months

---

[1] Details of these sentences in Case No. 1:21CR598 are as follows:

| Defendant | Range | Sentence | Sent. Date |
|---|---|---|---|
| Lawrence Lawson | 41-51 months | 51 months | 3/15/2022 |
| Terrance Jones | 24-30 months | 26 months | 3/7/2022 |
| Quantez Lawson | 12-18 months | 1 year and 1 day | 3/24/2022 |
| Emanuel Smith | 15-21 months | 17 months | 3/7/2022 |
| Charles Moore | 8-14 months | 8 months | 3/15/2022 |
| Mark Dailey | 0-6 months | 2 months | 3/9/2022 |

in prison and Augustin to 78 months in prison. As detailed below, 19 other conspirators in this scheme have been sentenced, 10 of whom have been sentenced to terms of imprisonment within the applicable Guidelines range.

On February 3, 2022, the court sentenced Keyaira Bostic to 44 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Bostic*, Case No. 20-CR-60139 (S.D. Fla.). On January 21, 2022, the court sentenced her co-defendant, Damion McKenzie, to 44 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. [*Id.* at ECF No. 133]. The Court granted a slight downward variance from the Guidelines range of 46-57 months for these two defendants given their role compared to the loss amount. On February 22, 2022, the court sentenced Shanrika Duhart to 15 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Duhart*, Case No. 20-CR-60254 (S.D. Fla.) (granting downward variance from 18-24 months Guidelines sentence on a loss amount of $388,790 and citing the defendant's status as a single mom of four children).

On February 14, 2022, the court sentenced co-conspirators David Redfern, Joseph Cartlidge, and Eric McMiller to 60, 72, and 66 months imprisonment, respectively, and also ordered three years of supervised released, and ordered the defendants to pay restitution and forfeiture. *United States v. Redfern, et al.*, Case No. 20-CR-00340 (M.D.N.C.). The intended loss for all three defendants was $2,778,474.85. The court applied the sophisticated means enhancement and the two-level enhancement under § 2B1.1(b)(12) to all three defendants, which for Redfern and McMiller, resulted in a sentence that was above the guidelines initially calculated on their PSRs. Cartlidge's sentence was within the guidelines applied by the court.

11

On February 1, 2022, the court sentenced co-conspirator Luke Pierre to 24 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Pierre*, Case No. 21-CR-60288-WPD (S.D. Fla.). On December 10, 2021, the court sentenced co-conspirator Joshua Bellamy to 37 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Bellamy*, Case No. 21-CR-60064-RKA (S.D. Fla.). On December 9, 2021, the court sentenced co-conspirator Yashica Bain to 24 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Bain*, Case No. 21-CR-60200-DMM (S.D. Fla.). On December 3, 2021, the court sentenced co-conspirator Jericca Rosado to 37 months imprisonment, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Rosado*, Case No. 21-CR-60211-JEM (S.D. Fla.). Each of these sentences was at the bottom of the applicable Guidelines range.

On October 18, 2021, the court sentenced co-conspirator Devonte Thames to 31 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Thames*, Case No. 21-CR-60125-RKA (S.D. Fla.). The sentence was at the bottom of the adjusted Guidelines range after the court granted the government's motion, pursuant to Section 5K1.1, and reduced Thames' sentence by approximately 33%. Meanwhile, on October 13, 2021, the court sentenced co-conspirator Dennes Garcia to 18 months imprisonment – which was at the bottom of the Guidelines range – three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Garcia*, Case No. 21-CR-60146 (S.D. Fla.).

In addition, on July 13, 2021, the court sentenced co-conspirator Tiara Walker to one year and one day, three years of supervised release, and ordered her to pay restitution and forfeiture. *United States v. Walker*, Case No. 20-CR-60159-RAR (S.D. Fla.). On July 27, 2021, co-

conspirator Tonye Johnson was sentenced by the court to 18 months in prison, three years of supervised release, and was ordered to pay restitution and forfeiture. *United States v. Johnson*, Case No. 21-CR-60017-RKA (S.D. Fla.). On September 24, 2021, the court sentenced Brian Arnold to time served, three years of supervised release, including one year of home confinement, 600 hours of community service, and ordered him to pay restitution and forfeiture. *United States v. Arnold*, Case No. 21-CR-20331-BB (S.D. Fla.). On December 14, 2021, Diamond Smith was sentenced to 20 months imprisonment and three years of supervised release, and was ordered to pay restitution and forfeiture. *United States v. Smith*, Case No. 21-CR-20001 (S.D. Fla.). Unlike defendants Smith, Thames, Walker, and Johnson, the proceeds for Defendant Arnold's fraudulent PPP loan were immediately frozen before he could pay any kickbacks or otherwise spend the funds. On October 8, 2021, the court sentenced Cindi Denton to six months imprisonment, three years of supervised release, including one year of home confinement, and ordered her to pay restitution and forfeiture. *United States v. Denton*, Case No. 21-CR-60171 (S.D. Fla.). Defendants Walker, Johnson, Arnold, and Denton had no criminal history points; they each sought fraudulent PPP loans for their own companies, for less than $500,000 each, and did not refer others to the scheme.[2] In addition, on April 29, 2022, Defendant Gary A. Venning received a below-Guidelines sentence of 3 years of probation, with a special condition of the first year being on home confinement, as well restitution.[3] *United States v. Venning*, Case No. 22-CR-60001 (S.D. Fla.).

---

[2] Notably, however, defendant Johnson tested positive for marijuana during the presentence investigation and attempted to conceal his marijuana use from Probation by using a device to provide urine from someone other than the test taker.

[3] While the Court termed the sentence "supervised release," the government understands the sentence imposed to be probation because the defendant did not receive any prison sentence, after which he could be released.

On July 30, 2021, the court sentenced Andre Clark to 33 months imprisonment, three years of supervised release, and ordered him to pay restitution and forfeiture. *United States v. Clark*, Case No. 21-CR-60029-WPD (S.D. Fla.). Defendant Clark sought his own fraudulent PPP loan and also referred other conspirators to the scheme, and he did so with a significant criminal history. Defendant Clark's sentence was at the bottom of the Guidelines as calculated by the Court, after the court held that a two-level minor role reduction was warranted because Clark ultimately received very little from the scheme, so his Guidelines loss amount greatly exceeded his personal gain.[4]

The intended loss amount of $18,349,392 from 40 fraudulent loans attributable to the Defendant's criminal activity is an important measure of his relative culpability as compared to co-conspirators in the scheme. That is, Stote, who led and organized the scheme in this case and was involved in preparing or submitting every fraudulent loan application, is being held responsible for a greater intended loss amount and a correspondingly higher advisory Guidelines range under Section 2B1.1 as compared to other conspirators who were involved in fewer fraudulent loans. A sentence that accounts for the loss associated with this Defendant, who is being held responsible for the loss associated with his fraudulent loans and those fraudulent loans he facilitated on behalf of others, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible.

---

[4]  Based primarily on his referrals, Clark's loss amount for sentencing purposes was between $3,500,000 and $9,500,000. However, Clark ultimately received little money from the scheme, which the Court found to be a significant factor at sentencing.

## V. RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the Plea Agreement [ECF No. 56 ¶ 72], the United States and the Defendant have agreed that the Defendant owes restitution. While the government recognizes that Probation has recommended a different Guidelines loss amount that could affect the restitution order, the United States is seeking restitution in the amount of $3,126,567.15, comprising $248,883.07 owed to Bank 2 and $2,877,684.08 owed to the Small Business Association (details have been provided under separate cover to Probation). Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases: *United State v. James Richard Stote*, Case No. 1:21-CR-805 (N.D. Ohio); *United States v. Cindi Denton*, Case No. 21-cr-60171 (S.D. Fla.); *United States v. Dennes Garcia*, Case No. 21-cr-60146 (S.D. Fla.); *United States v. Devonte Thames*, Case No. 21-cr-60125 (S.D. Fla.); *United States v. David Redfern*, Case No. 20-cr-340-1 (M.D.N.C.); *United States v. Joseph Cartlidge*, Case No. 20-cr-340-2 (M.D.N.C.); *United States v. Eric McMiller*, Case No. 20-cr-340-3 (M.D.N.C.); *United States v. Gary Venning*, Case No. 20-cr-60001 (S.D. Fla.).[5]

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to forfeit certain property. [ECF No. 48 ¶ 5.] On March 15, 2022, the Court entered a final order of forfeiture in which the Court ordered those properties forfeited pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), forfeiting the following item, which was purchased with proceeds of the offense:

> 18kt. white gold diamond engagement ring with one center stone: 3.54cts J color, VVS1 clarity, Square Emerald cut set on a pave set mounting with 1.50cts in round diamonds of G color, VS1 clarity. The ring, which had a $26,500.00 purchase price, was turned over to the government by ROSS CHARNO, through counsel, on or about November 5, 2021.

---

[5] Should the Court order restitution for the full scope of the conspiracy, the government asks that the Court use the same list of cases as used for Stote, as well as Mr. Stote's case.

[ECF No. 53]. The government requests that the Court incorporate the final order of forfeiture into its pronouncement of sentence and the written judgement.

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court find that the applicable Offense Level before acceptance of responsibility is 24, and should be reduced to 21 due to the Defendant's acceptance of responsibility. The government submits that a Guidelines range sentence is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement [ECF No. 48] and the authorities discussed herein.

Respectfully Submitted,

| MICHELLE M. BAEPPLER | JOSEPH S. BEEMSTERBOER |
| ACTING UNITED STATES ATTORNEY | ACTING CHIEF, FRAUD SECTION |

By: /s/ *Elliot Morrison*
ELLIOT MORRISON (OH: 0091740)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3919
Elliot.Morrison@usdoj.gov

By: /s/ *Philip B. Trout*
PHILIP B. TROUT (VA: 79152)
Trial Attorney, Fraud Section
U.S. Department of Justice
1400 New York Ave NW
Washington, DC 20530
Tel: (202) 616-6989
Fax: (202) 514-3708
Email: philip.trout@usdoj.gov